## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

**UNITED STATES OF AMERICA**                                               **PLAINTIFF**

**v.**                                          CIVIL ACTION NO.: 4:24-cv-106-DMB-JMV
                                                **JURY TRIAL DEMANDED**

**DELTA HEALTH ALLIANCE, INC.,**
**H. MARLIN WOMACK, JR., AND**
**JOHN DOES 1-5**                                                        **DEFENDANTS**

### COMPLAINT

This is an action by the United States of America against Delta Health Alliance, Inc. ("DHA"), H. Marlin Womack, Jr. ("Womack"), and John Does 1-5 to recover treble damages and civil penalties under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, and to recover money for common law or equitable causes of action for payment by mistake and unjust enrichment based upon DHA's receipt of Paycheck Protection Program ("PPP") funds to which DHA was not entitled.

### JURISDICTION AND VENUE

1.      This action arises under the FCA and the common law.

2.      The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1345 because the United States is the plaintiff. The Court also has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367(a).

3.      The Court has personal jurisdiction over Defendants under 31 U.S.C. § 3732(a) because one or more Defendant can be found, resides, or transacts business in this District, or has committed the alleged acts in this District.

4.     Venue is proper in this district under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) as one or more Defendant can be found in this District, and the subject transactions took place in the Northern District of Mississippi – specifically the Greenville Division.

## PARTIES

5.     Plaintiff, United States of America, guarantees and funds certain loans through the Small Business Administration ("SBA").

6.     Defendant, Delta Health Alliance, Inc., ("DHA") is a 501(c)(3) non-profit corporation with its principal place of business in Washington County, Mississippi, at the time of the subject loan and forgiveness, and continues to conduct business at the same location at the filing of this civil action – both within this District and the Greenville Division.

7.     Defendant, H. Marlin Womack, Jr., is an adult resident citizen of Memphis, Tennessee and the Executive Vice President of Operations and/or the Vice President of Finance & Administration of Defendant, DHA.

8.     Defendants, John Does 1-5 are other unknown persons, entities, or other responsible parties, unknown to Plaintiff at this time, who may have caused or contributed to cause the events that resulted in damages to the Plaintiff.

## The Paycheck Protection Program

9.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID- 19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other

expenses, through a program referred to as the Paycheck Protection Program ("PPP"). The program was modified and extended thereafter.

10.    To obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loans. In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to provide, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation confirming their payroll expenses.

11.    A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan and subsequent forgiveness process.

12.    PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The SBA allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

13.     The application process to obtain a PPP loan required the eligible recipient to make the following good faith certifications and acknowledgments:

    a.  That the applicant was eligible to receive a PPP loan under the rules in effect at the time the application was submitted (the "PPP Rules");

    b.  That the uncertainty of current economic conditions made the loan request necessary to support the ongoing operations of the eligible recipient;

    c.  That the applicant was in operation on February 15, 2020, had not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC;

    d.  That the funds would be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, or other covered costs under the PPP Rules;

    e.  That if the funds were knowingly used for unauthorized purposes, the federal government may find the individual legally liable for such charges as fraud;

    f.   That not more than 40 percent of the loan proceeds may be used for non-payroll costs;

    g.  That documentation verifying the number of full-time equivalent employees on payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities would be provided to the lender if required;

h. That the eligible recipient had not received and would not receive another loan under the Paycheck Protection Program;

i. That the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects;

j. That the applicant understood that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. §§ 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000.00; under 15 U.S.C. § 645 by imprisonment of not more than two years and/or a fine of not more than $5,000.00; and, if submitted to a federally insured institution, under 18 U.S.C. § 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.00; and

k. That the lender would confirm the eligible loan amount using the documents submitted by the applicant.

**The False Claims Act**

14. The FCA provides, in pertinent part, that any person who:

(a)(1)(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

(a)(1)(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

is liable to the United States for three times the amount of damages which the United States sustains, plus a civil penalty per violation. 31 U.S.C. § 3729(a)(1).

15. FCA penalties are regularly adjusted for inflation, pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015. *See* 28 U.S.C. § 2461

note. For violations occurring after November 2, 2015, the civil penalty amounts currently range from a minimum of $13,946 to a maximum of $27,894. 28 C.F.R. § 85.5. The amount at the time of judgment is dictated by the statute.

16.     For purposes of the FCA, the terms "knowing" and "knowingly"

(A) mean that a person, with respect to information—

    (i)  has actual knowledge of the information;

    (ii) acts in deliberate ignorance of the truth or falsity of the information; or

    (iii)acts in reckless disregard of the truth or falsity of the information; and

(B) require no proof of specific intent to defraud.

31 U.S.C. § 3729(b)(1).

17.     Under the FCA, the term "claim" includes requests to the United States for payment, whether made directly or indirectly to the United States. *Id*. § 3729(b)(2)(A).

18.     The FCA defines "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property. *Id*. § 3729(b)(4).

## Allegations

19.     It is a violation of the FCA to knowingly apply for or obtain an SBA-guaranteed PPP loan which is not supplied in compliance with the PPP Rules, and also a violation of the FCA to subsequently obtain forgiveness of such loan not in compliance with the PPP Rules. Defendants, Delta Health Alliance, Inc., by and through H. Marlin Womack, Jr., was involved in obtaining one PPP loan and subsequently involved in obtaining forgiveness of the subject loan, all in violation of the FCA.

20.     On or about April 13, 2020, Defendant, DHA, was approved for and received a PPP loan in the amount of $2,728,500.00 based upon misrepresentations in a loan application submitted to an unnamed financial institution (Bank 1) by and through

Womack. Upon information and belief, in the PPP loan application, DHA knowingly misrepresented its annual income and payroll costs and expenses and number of eligible employees, which were used in calculating the maximum loan amount for which DHA was eligible. These misrepresentations caused DHA to receive loan proceeds well in excess of what it would be entitled, if any at all. Womack certified that the information in the application and the information in the supporting documents was true and accurate in all material respects thus making Womack jointly and severally responsible for any false claims. According to both DHA's payroll report and general ledger, the numbers stated in its application as to payroll expenses and eligible employees are false.

21. Defendants knowingly used the PPP loan funds for unauthorized purposes beyond what was permitted by the terms of the loan and the statute.

22. Defendants, by and through Womack, knowingly misrepresented its use of the funds during the Covered Period (4/10/20 – 9/25/20) on the PPP Loan Forgiveness Application Form 3508EZ submitted for its PPP loan on or about May 4, 2021. Based upon the false representations in its forgiveness application, the SBA forgave the subject loans, and the United States incurred a loss.

23. The SBA paid approximately 1% of the loan amount in processing fees to Bank 1, an unnamed financial institution with its principal place of business located in Greenville, Mississippi, in connection with the PPP loan disbursed to DHA. The United States suffered loss for the loan processing fees.

24. Pursuant to the False Claims Act, the affirmative civil enforcement unit of the United States Attorney's Office for the Northern District of Mississippi engaged with Defendant Delta Health Alliance, through its counsel, and eventually obtained several sets of documents and other information relevant to the subject PPP loan and necessary to

discover whether or not false claims were made or if the Defendants obtained monies to which they were not lawfully entitled to receive and keep. These documents were analyzed and reviewed in the course and scope of the United States' investigation. Some particular examples of False Claims Act violations are stated below:

    a. Delta Health Alliance, Inc. purported to operate "Other Grantmaking and Giving Services" - NAICS 813219 – in the northern Mississippi area. DHA receives the overwhelming majority of its income from federally funded grants that cover the resultant payroll and expenses. Salaries paid for by a grant during the covered period necessarily cannot be paid for by PPP funds. DHA is required to maintain a general ledger that records each financial transaction that is further segregated by type.

    b. DHA impermissibly calculated its PPP monthly payroll based on *all* employees as of March 27, 2020, rather than its eligible non-grant funded employees. On its application, DHA certified and listed $1,091,437.34 as average monthly payroll resulting in a PPP loan of over $2,728,500.00. DHA's own payroll and general ledger documents prove that its eligible monthly payroll could not be more than $302,106.62 - $421,191.13, which would have resulted in a drastically lower PPP loan. (These amounts should be reduced further due to double-counting payroll charged to grants.) DHA's application contained false statements that were material to the payment of loan funds and the subsequent guarantee and forgiveness by the United States.

    c. DHA requested forgiveness for expenditures that are not supported by its documentation submitted to the lender or contained in its general

ledger. Evidence shows that DHA double-counted some expenditures and included expenditures that were directly and indirectly paid by federal grant funds.

d.  DHA's loan forgiveness application is false in several respects. Similar to its application, it's eligible Payroll Costs of $7,888,006.79 are wrong and not supported by its own documents.

e.  DHA requested forgiveness for Business Rent & Lease payments totaling $194,657.99. This is false. Later, in its supporting documentation submitted in the course of the FCA investigation, DHA provided documentation purporting $68,396.31 in eligible payments. This is likewise false. At best, DHA had $56,648.45 in eligible expenses.

f.  DHA requested forgiveness for Business Utility payments totaling $183,406.19. This is false. Later, in its supporting documentation submitted in the course of the FCA investigation, DHA provided documentation purporting $147,581.81 in eligible payments. This is likewise false. At best, DHA had $89,494.81 in eligible expenses.

g.  DHA requested forgiveness for Covered Operational Expenditures totaling $2,055,071.19. This is false. Later, in its supporting documentation submitted in the course of the FCA investigation, DHA provided documentation purporting $767,633.23 in eligible expenditures. This is likewise false. At best, DHA had $126,861.84 in eligible expenses.

25.  Upon information and belief, false statements and documents were knowingly submitted to Bank 1, by and through Womack, which misrepresented the amount of eligible payroll and expenses for DHA's qualification for the subject loan and

also, false statements and documents were submitted to Bank 1 and/or SBA which misrepresented use of the loan proceeds. These false statements in both the loan application and forgiveness application were material to the payment of money by Bank 1 and the subsequent reimbursement by the SBA, causing damages to the United States as stated herein.

The United States realleges and incorporates all paragraphs above of this Complaint as fully set forth herein in all Counts listed below:

## COUNT I
### False Claims Act, 31 U.S.C. § 3729(a)(1)(A)
### Presenting or Causing False Claims to Be Presented for Payment

26. Delta Health Alliance, Inc. and H. Marlin Womack, Jr. knowingly requested and obtained one PPP loan for an amount it was not entitled to, in violation of the PPP Rules.

27. Delta Health Alliance, Inc. and H. Marlin Womack, Jr. knowingly requested and received forgiveness of the subject PPP loan, despite their failure to comply with the PPP Rules.

28. By virtue of these false claims, the United States was damaged for the full amount of the PPP loan and the processing fees paid to Bank 1, plus any other costs or interest, and is entitled to treble damages under the FCA, plus civil penalties for each violation.

## COUNT II
### False Claims Act, 31 U.S.C. § 3729(a)(1)(B) Making or
### Using False Records or Statements

29. Delta Health Alliance, Inc. and H. Marlin Womack, Jr. knowingly submitted one PPP loan application that contained misrepresentations regarding its payroll costs and intended use of PPP funds.

30.     Delta Health Alliance, Inc. and H. Marlin Womack, Jr. subsequently knowingly submitted a PPP forgiveness application that misrepresented its use of the PPP funds and eligibility for loan forgiveness.

31.     By virtue of these false statements, the United States was damaged for the full amount of the loans and the processing fees paid to Bank 1, plus any other costs or interest, and is entitled to treble damages under the FCA, plus civil penalties for each violation.

<div align="center">

**COUNT III**
False Claims Act, **31 U.S.C. § 3729(a)(1)(G) – Reverse False Claims**

</div>

32.     Defendants, through their own acts and through their various agents and/or employees, knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the Government, in violation of 31 U.S.C. § 3729(a)(1)(G).

<div align="center">

**COUNT IV**
**Unjust Enrichment**

</div>

33.     This is a claim for the recovery of monies by which Defendants have been unjustly enriched.

34.     By obtaining from the United States, through Bank 1, funds to which it was not entitled, Defendants were unjustly enriched, and the United States is entitled to damages in an amount of $2,728,500.00, plus loan processing fees, plus interest, together with any other damages to be determined at trial.

<div align="center">

**COUNT V**
**Payment by Mistake**

</div>

35.     This is a claim for the recovery of monies the United States paid directly or indirectly to Defendants as a result of mistaken understandings of fact.

<div align="center">

11

</div>

36.     The United States' mistaken understandings of fact were material to its decision to approve and then forgive the PPP loans provided by Defendants.

37.     The United States, acting in reasonable reliance on the truthfulness of the statements contained in the PPP loan applications, approved a loan to Defendants to which it was not entitled.

38.     The United States, acting in reasonable reliance on the truthfulness of the statements contained in the PPP loan forgiveness applications, forgave the PPP loan when it was not eligible for forgiveness.

39.     Thus, the United States is entitled to recoup the amount of the PPP loans, processing fees, interest, plus any other amounts to be determined at trial.

## PRAYER FOR RELIEF AND JURY DEMAND

The United States requests that the Court enter judgment against Delta Health Alliance, Inc. and H. Marlin Womack, Jr., jointly and severally as allowed by law, and grant the following relief:

(a) On Counts I, II, and III (False Claims Act), awarding the United States treble the damages it sustained for (1) the $2,728,500.00 loan plus one percent interest applied from the date of the loan and (2) the processing fees paid by the United States to Bank 1, together with the maximum civil penalties allowed by law;

(b) On Count IV (Unjust Enrichment), awarding the United States the amount by which Defendants was unjustly enriched;

(c) On Count V (Payment by Mistake), awarding the United States the amount mistakenly paid to Defendants;

(d) awarding the United States pre- and post-judgment interest, costs, and filing fees; and

(e)  granting such other relief as the Court may deem just and proper.

The United States further demands a trial by jury of all issues so triable pursuant to Fed. Rule Civ. P. 38.

Respectfully submitted this 5th day of November, 2024.

<div style="margin-left:40%">

Clay Joyner
United States Attorney

By:    *s/ John E. Gough, Jr.*
JOHN. E. GOUGH, JR. (MSB #10351)
Assistant United States Attorney
900 Jefferson Avenue
Oxford, Mississippi 38655-3608
t: 662.234.3351
e: john.gough@usdoj.gov

*s/ J. Harland Webster*
J. HARLAND WEBSTER (MSB #102458)
Assistant United States Attorney
900 Jefferson Avenue
Oxford, Mississippi 38655-3608
t: 662.234.3351
e: joseph.webster@usdoj.gov

</div>