IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

UNITED STATES OF AMERICA     )
                                 )
        Plaintiff,              )
                                 )
v.                            )     Case No: 4:24-cv-00106-DMB-JMV
                                 )
DELTA HEALTH ALLIANCE, INC.,    )
H. MARLIN WOMACK, JR., AND    )
JOHN DOES 1-5               )
        Defendants.           )

## MEMORANDUM IN SUPPORT OF JOINT MOTION TO DISMISS BY DHA AND MARLIN WOMACK

       The government has filed suit against defendants Delta Health Alliance, Inc. ("DHA"), and H. Marlin Womack ("Womack"), DHA's chief operating officer, for False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA") violations involving the Small Business Administration's ("SBA") Paycheck Protection Program ("PPP"). The government, however, misunderstands the PPP loan program's rules and regulations, invents non-existent requirements, fails to plead fraud with particularity, and utterly fails to plead any facts that support a plausible inference of scienter for either DHA or Womack.  Because the government has not and cannot plead laws, regulations, or even any SBA guidance that would support FCA violations against either DHA or Womack, the case should be dismissed with prejudice.

## I.    BACKGROUND

### A.  DHA and the Government's Complaint

       DHA is a non-profit, born in and serving the historically impoverished Mississippi Delta region—the organization's sole purpose is to improve health and educational opportunities for local families who have been dealt a less than fair hand. https://deltahealthalliance.org/; *see also*

1

Doc. #1, ¶ 6. Womack is a DHA staff member, who serves as the Executive VP of Operations. https://deltahealthalliance.org/who-we-are/our-staff/; *see also* Doc. #1, ¶ 7. The government filed suit against Defendants on November 5, 2024, alleging FCA violations.

Most of the government's complaint (ten of fourteen pages) simply references jurisdiction, recites boiler plate legal standards, and includes standard cause of action paragraphs. Doc. # 1, pp. 1-6 and 10-14. The government attempts, and fails, to plead a fraudulent scheme involving complex regulatory provisions and financial accounting in ***a mere four pages***. Even in those four pages, the government's allegations are wholly conclusory and demonstrate a significant misunderstanding of the PPP Loan program requirements. Doc. # 1, pp. 6-10, ¶ 24.

In the complaint the government claims that DHA knowingly included false information in two applications submitted to the SBA to obtain a PPP loan and forgiveness of that loan. The government includes Womack as a defendant solely because he signed the certifications on those applications. The government, however, alleges nothing about Womack's actions or knowledge. No other staff or agent of DHA is mentioned in the complaint, let alone alleged to have taken any action to submit false claims to the government. Based on the foregoing, the government brings several FCA causes of action against DHA and Womack—presentment (Count I), false records/statements (Count II), and reverse false claims (Count III)—and alternate claims for unjust enrichment (Count IV) and payment by mistake (Count V).

**B. The Paycheck Protection Program**

In late March 2020, the world was in the grip of a worldwide pandemic causing massive economic disruption. In addition to other measures meant to stem the spread of COVID-19, businesses around the country were shuttered or required to significantly curtail operations. In response to these circumstances, Congress enacted the Coronavirus Aid, Relief and Economic

Security Act (the "CARES Act"). Part of the CARES Act created the PPP loan program and directed the SBA to implement the program.

       1.  *The SBA Instituted the PPP Loan Program Rapidly and With Little Guidance*

The CARES Act was signed by the President on March 27, 2020. CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (Mar. 27, 2020). The government initially allocated $349 billion to this program. *Small Business Paycheck Protection Program*, U.S. Dep't of the Treasury (Apr. 2, 2020), https://www.sba.gov/article/2020/apr/02/349-billion-emergency-small-business-capital-cleared-sba-treasury-begin-unprecedented-public-private-0. Within one week, on April 3, 2020, the SBA opened this $349 billion program to loan applicants.

The PPP loan program was implemented extremely rapidly in order to make money available almost immediately to businesses shut down across the country in the early days of the COVID pandemic. The government encouraged businesses to apply as quickly as possible because there was a funding cap on the PPP program. *Id.* This created extreme pressure for businesses to move as quickly as possible to submit loan applications for fear that the program would run out of money before they could apply. In the first 14 days of the program, more that 1.6 million PPP loans were approved totaling nearly $342.3 billion. *Flash Report, Small Business Administration's Implementation of the Paycheck Protection Program Requirements*, May 8, 2020.[1]

During the first few weeks of the PPP, the SBA's guidance consisted of a Frequently Asked Questions (FAQ) document that was amended frequently to address questions of general concern. *FAQ for PPP Borrowers and Lenders*, U.S. Small Bus. Admin. (Apr. 6, 2020), https://www.sba.gov/document/support-faq-ppp-borrowers-lenders. By April 10, the day that DHA submitted its application, three versions of the FAQs had been issued addressing 21

---

[1] https://www.sba.gov/sites/default/files/2020-05/SBA_OIG_Report_20-14_508.pdf.

questions. *Id.* None of the SBA's guidance at the time of DHA's loan application addressed how a non-profit that receives government grants should count its employees and payroll. *Id.*

### i. DHA's PPP Applications

The government's complaint is based on alleged misrepresentations in two documents: 1) DHA's PPP Loan Application ("Loan Application"); and 2) DHA's PPP Loan Forgiveness Application ("Forgiveness Application").[2] Under the program, borrowers initially submitted an application for a loan on a PPP form developed by the SBA. Applicants filled in blanks on the form for the information required. Two pieces of information required on the PPP Application form were "Average Monthly Payroll" and "Number of Employees." *PPP First Draw Borrower Application Form*, Small Bus. Admin. (Apr. 2, 2020), https://www.sba.gov/document/sba-form-2483-ppp-first-draw-borrower-application-form. The SBA included brief instructions on the application form. None of the instructions in the application form addressed whether employees whose salaries might be covered by grants should be included in the "Average Monthly Payroll" calculations or the "Number of Employees."

After receiving the loan, a borrower seeking "forgiveness" of the SBA loan was required to file an application to obtain forgiveness. That forgiveness application was also an SBA developed form that required the applicant to report certain information including: 1) Payroll Costs; 2) Business Rent or Lease Payments; 3) Business Utility Payments; and 4) Covered Operations Expenditures. The SBA issued several forgiveness forms with detailed instructions. *PPP Loan Forgiveness*, Small Bus. Admin. (Oct. 3, 2024), sba.gov/pppforgiveness. None of the instructions, however, dealt with eligible expenses for grant recipients. *Id.* No SBA regulation or guidance at the time of DHA's forgiveness application (May 5, 2021) addressed how expenses

---

[2] Copies of the PPP Loan Application and the PPP Loan Forgiveness application filed by DHA are attached as Attachments A and B to the motion.

funded by federal grants should be accounted for on the forgiveness application. As of the date of this filing, the SBA has still issued no guidance on this subject.

## II.    LEGAL STANDARD

At a bare minimum, under Rules 8(a) and 12(b)(6), a complaint must contain "sufficient factual matter" to state a plausible claim for relief to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts that are "merely consistent" with liability "stop[] short of the line between possibility and plausibility." *Id.* While a court must accept as true all "well-pleaded factual allegations" asserted in a complaint, conclusory allegations "are not entitled to an assumption of truth." *Id.* at 664. A "merely speculative inference" is not enough, and the court should "ignore the complaint's legal conclusions in determining facial plausibility." *Ghedi v. Mayorkas*, 16 F.4th 456, 463 (5th Cir. 2021) (internal citations omitted).

Because the FCA is a fraud statute, "a complaint filed under the False Claims Act must meet the heightened pleading standard of Rule 9(b)," which the Fifth Circuit applies "with 'bite' and 'without apology.'" *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). Under Rule 9(b)'s more stringent standard, a claim for fraud must be stated with "particularity" to survive a motion to dismiss. Fed. R. Civ. P. 9(b). Rule 9(b) "requires, at a minimum, that a plaintiff plead the who, what, when, where, and how of the alleged fraud." *U.S. ex rel. Colquitt v. Abbott Labs.*, 858 F.3d 365, 371 (5th Cir. 2017) (quotation omitted).

The Fifth Circuit has explained that, for liability to attach under the FCA, the court must conclude that the government's complaint establishes: "(1) … a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a

claim)." *U.S. ex rel. Harman v. Trinity Indus. Inc.*, 872 F.3d 645, 653-54 (5th Cir. 2017) (quotation omitted). The government has failed to adequately plead any of its claims either under Rule 8(a) or under Rule 9(b), and the complaint should therefore be dismissed with prejudice.

## III.    ARGUMENT

### A.  The Government Fails to Plead Fraud in the PPP Applications

The government alleges that DHA and Womack violated the FCA based on purported false statements in two documents: 1) DHA's Loan Application (the "Loan Application") and 2) DHA's Forgiveness Application (the "Forgiveness Application"). The government, however, bases its allegations of falsity in the Loan Application on invented requirements that exist nowhere in law, regulation, or SBA guidance. Similarly, the allegations for fraud in the Forgiveness Application are based on the government's faulty, after the fact, interpretation of ambiguous language included in the SBA's completed loan application form. Not only is the government's legal basis for its claims faulty, moreover, the government fails to meet its obligations to plead fraud with particularly under Rule 9(b), and has utterly failed to plead the requisite FCA scienter. These fatal errors are evident on the face of the complaint and require that this case be dismissed.

*1.  The Government Invents a Non-Existent Rule to Allege Falsity in the Loan Application*

To support its claim that DHA and Womack knowingly misrepresented DHA's "Average Monthly Income" and "Number of Employees" in the Loan Application, the government invents a rule that DHA could not include employees whose salaries are reimbursable by federal grants in its calculation of "Average Monthly Payroll." This rule exists nowhere but in the government's complaint and is contradicted by the plain language in the Loan Application and in the instructions to borrowers provided by the SBA. The government has failed to plead any facts that would support falsity in the Loan Application.

To plead falsity, the government must establish that the information provided was false when submitted. "Initially, we note that the falsity of a claim is determined *at the time of submission*…Fortuities in the government's decision-making process have no effect on the objective truth or falsity of the claimant's asserted entitlement, and should thus have no effect on the claimant's potential liability under the [FCA]." *U.S. v. Southland Mgmt. Corp.*, 288 F.3d 665, 681 (5th Cir. 2002), *reh'g en banc granted on other grounds*, 326 F.3d 669 (5th Cir. 2003). Thus, to establish falsity in DHA's Loan Application, the government must establish that facts included therein were false on April 10, 2020, the day DHA submitted the application.

Acting on the government's guidance to submit PPP applications as soon as possible, DHA submitted its Loan Application a mere seven days after the SBA opened the PPP loan program. Few rules and even less guidance existed with respect to how borrowers were supposed to calculate the information required in the application. Indeed, the rules that did exist required that "each employee" be included in the "Average Monthly Payroll" calculation.

The Loan Application is a fill-in-the blank form that requires the applicant to supply the information indicated on the form. The SBA required that borrowers supply their "Average Monthly Payroll" and "Number of Employees." The Loan Application also instructed borrowers how to calculate their "Average Monthly Payroll."

> For purposes of calculating "Average Monthly Payroll," most Applicants will use the average monthly payroll for 2019, excluding the cost over $100,000 on an annualized basis *for each employee.*" (emphasis added).[3]

The government's allegations are insufficient to even plausibly allege falsity. *Iqbal,* 556 U.S. at 680 (explaining that conduct does not allege illegal conduct if it is also compatible with lawful behavior). The government cannot plausibly allege that DHA violated a rule in its

---

[3] PPP First Draw Loan Application of April 2, 2020, available at: https://www.sba.gov/sites/default/files/2022-02/PPP-Borrower-Application-Form-Fillable.pdf

calculations if the government cannot even cite the rule it claims was violated. Moreover, under Rule 9(b) the government must state with particularity what statute, regulation, or rule DHA violated by including its grant-funded employees in the payroll calculations in its PPP application. *See U.S. ex rel. Steury v. Cardinal Health, Inc.*, 735 F.3d 202, 206-207 (5th Cir. 2013) (noting that plaintiff must rely on express statutes or regulations to establish falsity). The government does not, and cannot allege that on April 10, 2020, there was any requirement in the law, regulations, SBA rules, or any guidance from the SBA that *all* employees could not be included in these calculations for the "Average Monthly Payroll" and "Number of Employees" required on the Loan Application. Indeed, the SBA's instructions clearly state that "each employee" should be included in these calculations.

Having failed to allege any rule that prohibits inclusion of all of DHA's employees in this calculation and having failed to address the clear language of the application form that required inclusion of these employees in the calculation, the government nonetheless alleges "DHA impermissibly calculated its PPP monthly payroll based on *all* of its employees as of March 27, 2020, rather than its eligible non-grant funded employees." Doc. # 1, ¶ 24b. This is not only a conclusory allegation without any citation to the applicable rules, but it is also demonstrably incorrect under the applicable instructions and guidance from the SBA at the time. *U.S. ex rel. Brooks v. Stevens-Henager Coll., Inc.,* 359 F. Supp. 3d 1088, 1105 (D. Utah 2019) (finding that the government failed to adequately allege any false claim because the government's theory was "an unsupported legal conclusion that [was] belied by the applicable regulations"). This "rule," fabricated by the government, is the entire basis for the government's allegation that the "Average Monthly Payroll" and "Number of Employees" included in the Loan Application is false. The government has thus failed to alleged falsity in DHA's Loan Application.

2. *The Government Fails to Plead an FCA Violation with the Required Particularity in the Forgiveness Application*

The government likewise has failed to plead a basis for falsity in the costs and expenses included in the Forgiveness Application. Further, although the government alleges that DHA double-counted expenses and included expenses paid for by grants, it does not identify which double-counted-expenses or expenses paid for by federal grants were improperly included in the Forgiveness Application. The government's naked assertions that the costs and expenses DHA recorded on the Forgiveness Application are wrong because the government calculates them to be different are merely conclusory allegations insufficient to meet the pleading with particularity requirement of 9(b).

i. *The Government's Basis for Alleging Falsity in the Forgiveness Application is Erroneous*

The government's primary basis for falsity in the Forgiveness Application is its conclusion that "[s]alaries paid for by a grant during the covered period necessarily cannot be paid for by PPP funds." Doc. # 1, ¶ 24a. That conclusion is wholly without support, but even if supported and true, it is insufficient to show falsity on the Forgiveness Application. There is no SBA regulation or rule about how to account for PPP loans that intersect with grant-funded expenses on the Forgiveness Application.

Similar to the Loan Application, DHA included the exact information required by the Forgiveness Application: 1) Payroll Costs; 2) Business Rent or Lease Payments; 3) Business Utility Payments; and 4) Covered Operations Expenditures. The government's complaint fails to cite a single statute, regulation, or even any sub-regulatory guidance establishing that it is inappropriate to certify a PPP application which includes grant-funded employees and/or expenses in its calculations. It does not, because it cannot.

9

There was no statute, regulation, or guidance at the time of the application that said grant-funded expenses could not be included in the calculations of the costs and expenses in the Loan or Forgiveness Applications. Nor is there any today.  In fact, the plain language of the Forgiveness Application calls for "Payroll Costs," which is a defined term in the CARES Act.  Notably the definition of "Payroll Costs" has multiple exclusions, but it does not exclude grant-funded employee costs. 15 U.S.C. §636(a)(36(A)(viii).  The SBA had subsequent opportunities to exclude expenses payable by grants but declined to do so.  *See Interim Final Rule Loan Forgiveness Requirements and Loan Review Procedures as Amended by the Economic Aid Act,* 86 Fed. Reg. 8283, 8286, February 5, 2021 (defining Payroll Costs without excluding costs payable by grants). Thus, it would be entirely reasonable for DHA and Womack to conclude that when the loan application asked for "Payroll Costs," it meant the payroll costs as repeatedly defined in law and regulation (without exclusion of grant funded expenses).  Similarly, there is no qualification or exclusion in any statute or regulations for grant-funded expenses for any of the other expense categories reported on the Forgiveness Application.

### 3. *The Government Failed to Plead a Fraudulent Scheme with Particularity*

The government also accuses DHA of double-counting some expenses and including expenditures paid for by federal grants, resulting in false statements in the expenses list on the Forgiveness Application.  The government, however, has not identified which expenses were double-counted or what expenses were paid for by federal programs that should not have been. Nor does it identify who double-counted the funds, or included the expenditures paid for by federal grant funds. "The time, place and contents of the false representations, as well as the identity of the person making the misrepresentations and what [that person] obtained thereby must be stated in a complaint alleging violation of the FCA in order to satisfy Rule 9(b)." *U.S. ex rel. Doe v.*

10

*Dow Chemical Co.* 343 F.3d 325, 329 (5th Cir. 2003) (internal quotations omitted). The government has not pled the content of any false statements that included double counting or expenses paid for by grants even though it has had access to DHA's detailed accounts and general ledger. Doc. # 1, ¶ 24 and 24a (stating that the U.S. Attorney's Office obtained documents from DHA and discussing DHA's payroll documents and general ledger).

The government's allegations that DHA's costs and expenses reported in the Forgiveness Application are false because the government calculates they should be lower fair no better. Doc. # 1, ¶ 24b-g. The government again alleges no particularized facts about how DHA's reported amounts are false and how the government's calculations are correct. Nor does the government plead any facts on how this happened, who did it, or why they did it.

**B. The Complaint Includes No Allegations Demonstrating Any Defendant Knowingly Submitted False Information, Which is Required by the FCA.**

The United States failed to allege sufficient facts to plead either DHA or Womack acted with FCA scienter. The government must allege facts sufficient to show that DHA and Womack acted knowingly in making the false claim. *Grubbs*, 565 F.3d at 188; *see also U.S. ex rel. Monsour v. Performance Accounts Receivable, LLC*, 640 F. Supp. 3d 630, 637 (S.D. Miss. 2022). To act knowingly for purposes of the FCA, a defendant must either (1) have actual knowledge of the information"; (2) "act[ ] in deliberate ignorance of the truth or falsity of the information"; or (3) "act[ ] in reckless disregard of the truth or falsity of the information. *Monsour*, 640 F. Supp. 3d at 638. The Supreme Court has described the scienter requirement as "rigorous." *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 192 (2016). Moreover, this requirement is "not met by mere negligence or even gross negligence." *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 338 (5th Cir. 2008).

Recently, the Supreme Court clarified scienter standards under the FCA. *U.S. ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739 (2023). FCA scienter refers to the defendant's "knowledge and subjective beliefs—not to what an objectively reasonable person may have known or believed." *Id.* at 749. FCA scienter covers those "who are aware of a substantial risk that their statements are false, but intentionally avoid taking steps to confirm the statement's truth or falsity," as well as those who are "conscious of a substantial and unjustifiable risk that their claims are false, but submit the claims anyway." *Id.* at 751.

Although scienter need not be pled with particularity under Rule 9(b), it must be pled plausibly under Rule 8. *U.S. v. Bollinger Shipyards, Inc.,* 775 F.3d 255, 260 (5th Cir. 2014). Thus, to sufficiently plead scienter "the complaint must allege 'more than labels and conclusions,' 'a formulaic recitation of the elements of a cause of action will not do,' and 'factual allegations must be enough to raise a right to relief above the speculative level.'" *Jebaco, Inc. v. Harrah's Operating Co., Inc.*, 587 F.3d 314, 318 (5th Cir. 2009) (citing *Twombly,* 550 U.S. at 555).

In an FCA case "[a]llegations of scienter may be averred generally, but simple allegations of fraudulent intent will not suffice, and plaintiffs must set forth specific facts supporting an inference of fraud." *U.S. ex rel. Frey v. Health Mgmt. Sys., Inc.*, 2023 WL 2563239 (S.D. Tex. Feb. 10, 2023), *report and recommendation adopted sub nom. Frey v. Health Mgmt. Sys., Inc.*, No. 4:21-CV-02024, 2023 WL 2564342 (S.D. Tex. Mar. 17, 2023) (internal quotations and citations omitted); *see also U.S. ex rel. Harper v. Muskingum Watershed Conservancy District*, 842 F.3d 830, 837 (6th Cir. 2016) (explaining that a plaintiff must allege facts that create the inference that defendant knew its conduct was illegal, acted with reckless disregard, or acted with deliberate ignorance).

12

The complaint includes no facts relating to Womack's scienter, let alone the mindset of any other person at DHA which might be ascribed to DHA. With respect to knowledge, the complaint includes only three paragraphs of conclusions, admittedly based on speculation: "[u]pon information and belief," defendants did x "knowingly," or defendants did y "knowingly." *See, e.g.,* Doc. # 1, ¶¶ 21, 22, & 25. These conclusory statements are supported by no facts from which a court could infer that DHA or Womack or any other agent of the company acted with actual knowledge, reckless disregard, or willful blindness as explained by the Supreme Court in *Schutte*.

The government's reliance on speculatively pleading scienter "based on information and belief" is appropriate only when "the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge. *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp*. 125 F.3d 899, 903 (5th Cir. 1997). The government can make no such claim here and is not entitled to allege on "information and belief." The government has full authority under the FCA to subpoena documents, demand sworn answers to interrogatories, and compel sworn testimony under depositions, before filing a complaint. 31 U.S.C. § 3733(a)(1). Further, the government did in fact subpoena documents from DHA and "analyzed and reviewed" during its investigation." Doc. # 1, ¶ 24. Thus, the government cannot say that the facts were peculiarly within DHA's or Womack's knowledge.

Even if the government could plead on information and belief to support a claim of fraud, the Fifth Circuit has warned this is not a "license to base claims of fraud on speculation and conclusory allegations" and that "where allegations are based on information and belief, the complaint must set forth a factual basis for such belief." *Thompson*, 125 F.3d at 903 (citations omitted). The government has pled no facts that would support these conclusory allegations based

on "information and belief." Allegations based on "information and belief" must therefore be disregarded.

Additionally, against Womack the government has completely failed to allege any fact that would suggest Womack personally acted with reckless disregard or willful blindness as defined by the Supreme Court in *Schutte*. When the government pursues an FCA case against an individual it must show that the individual personally had the guilty knowledge necessary to violate the FCA. *U.S. ex rel. Taylor-Vick v. Smith,* 513 F.3d 228, 231 (5th Cir. 2008). Further, merely signing false documents is insufficient to establish guilty knowledge. *Id.* at 232 (citing *United States v. Priola*, 272 F.2d 589, 594 (5th Cir. 1959)).

To the extent the government relies on its barebones falsity allegations elsewhere in the complaint to prop up its scienter conclusions, these allegations do not meet the mark. Allegations consistent with "mere negligence" or even "gross negligence" do not meet the FCA's threshold for scienter. *Farmer*, 523 F.3d at 338; *see also U.S. ex rel. Jacobs v. Walgreen Co.*, No. 21-20463, 2022 WL 613160, at *1 (5th Cir. Mar. 2, 2022). At worst, the government's citation of calculation differences between the initial applications in 2020 and 2021 and documents produced during the investigation in 2023 and 2024 indicate "mistakes," which are not actionable under the FCA. *Farmer*, 523 F.3d at 338; *see also Taylor-Vick,* 513 F.3d at 232 (explaining that negligently submitting false claims to Medicare "does not offend the FCA."); *Monsour*, 640 F. Supp. 3d at 639-40 (dismissing FCA complaint for failure to properly allege scienter "in the absence of a factual basis to infer that [defendant] had obvious reasons to doubt whether [service provider] was providing accurate information" regarding allowable costs to submit in report to government); *U.S. ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*, 816 F. App'x 892, 897 (5th Cir. 2020) ("Rule 8(a) prohibits any claims that are merely conceivable rather than plausible. A

claim is merely conceivable and not plausible if the facts pleaded are consistent with both the claimed misconduct and a legal and "obvious alternative explanation.").

### C. The Government's Reverse False Claims Cause of Action is Redundant of its Presentment and False Statement Causes of Action.

The government's reverse false claims cause of action is no better pleaded than its presentment and false statement counts and should also be dismissed. The government cannot simply "recast[]" claims under § 3729(a)(1)(A) or (B) by alleging "a failure to refund the false claims the government paid." *U.S. ex rel. Ligai v. ETS-Lindgren Inc.*, No. CIV.A. H-112973, 2014 WL 4649885, at *13 (S.D. Tex. Sept. 16, 2014) *aff'd* 611 F. App'x. 219 (5th Cir. 2015). "This type of redundant false claim is not actionable under subsection (a)(1)(G)." *Id.* (quoting *U.S. ex rel. Porter v. HCA Health Services of Oklahoma, Inc.*, 3:09-cv-0992, 2011 WL 4590791, at *8 (N.D. Tex. Sept. 30, 2011)) (alteration marks omitted); *see also United States v. Cockerell Dermatopathology, P.A.*, No. 3:21-CV-0672-B, 2021 WL 4894173, at *9 (N.D. Tex. Oct. 20, 2021) ("[A] reverse false claim cannot merely … be the other side of a coin to a direct false claim, or provide a duplicate basis for liability. Furthermore, the obligation to repay the government must arise from something more than merely retaining an overpayment or an improperly obtained payment from the Government.").

Here, the complaint contains no factual allegations describing an independent financial obligation owed to the government. *U.S. ex rel. Rigsby v. State Farm Fire & Cas. Co.*, No. 1:06CV433-HSO-RHW, 2011 WL 4590761, at *12 (S.D. Miss. Sept. 30, 2011) (entering judgment in favor of defendants on reverse false claims cause of action because "Relators have not demonstrated that the repayment obligation or the nature of State Farm's relationship with the government would constitute a separate and independent reverse FCA claim, as opposed to an obligation to reimburse overpayment on a direct claim."). It is not enough for the government to

claim Defendants "violated the reverse false claims provision by receiving a windfall which should have been refunded to the government for government funded services. …[T]his argument amounts to mere speculation as it is unsupported by the factual allegations in the complaint." *U.S. ex rel. Doe v. Lincare Holdings, Inc.*, No. 5:15-CV-19-DCB-MTP, 2017 WL 752288, at *7 (S.D. Miss. Feb. 27, 2017). Because the government's reverse false claim count is based on the same deficient allegations as its presentment and false statement counts, the Court should dismiss the claim.

**D. The Government's Unjust Enrichment and Payment by Mistake Claims Fail to State a Claim.**

Although not subject to Rule 9(b)'s heightened pleading standards like the government's FCA fraud causes of action, the unjust enrichment and payment by mistake causes of action still must meet basic Rule 8, Rule 12(b)(6), and *Twombly/Iqbal* pleading requirements. The government here does not even mention the elements of unjust enrichment or payment by mistake in the complaint, let alone include any facts relating to these causes of action.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Mere conclusory statements without supporting factual allegations cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. Based on these principles, courts evaluate a motion to dismiss using a two-step process. First, the court identifies the pleadings that are not entitled to an assumption of truth—*i.e.*, those that are mere conclusions—and eliminates them. *Id.* Second, the court considers whether the remaining, well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id.* at 679. The government includes unjust enrichment and payment by mistake causes of action as an afterthought in the final pages of its complaint. These causes of action do not meet basic

16

pleading requirements, as the complaint contains no factual allegations establishing the essential elements of either claim.

"[R]ecovery under unjust enrichment is justified when one person obtains a benefit from another by fraud, duress, or the taking of an undue advantage." *United States v. Medica Rents Co.*, No. 03-11297, 2008 WL 3876307, at *3 (5th Cir. Aug. 19, 2008) (citation omitted). There are no plausible allegations of fraud (the FCA allegations fail for the reasons set forth above), let alone allegations of duress, or an undue advantage in the complaint. There are no allegations in the complaint demonstrating that Defendants should have known a miscalculation was even made, let alone that the government's "expectations" would be defeated by Defendants claiming and retaining the PPP funds in question.

The government's payment by mistake cause of action fairs no better. Under the doctrine of payment by mistake, the government may recover funds which it has wrongfully, erroneously, or illegally paid from a party that received the funds without right. *Medica Rents Co. Ltd.*, 2008 WL 3876307, at *3; *see also U.S. ex rel. Acad. Health Ctr., Inc. v. Hyperion Found., Inc.*, No. 3:10-CV-552-CWR-LRA, 2014 WL 3385189, at *45 (S.D. Miss. July 9, 2014) *report and recommendation adopted sub nom. U.S. ex rel. Acad. Health Ctr., Inc. v. Hyperion Found., Inc.*, No. 310CV00552CWRLRA, 2017 WL 3260134 (S.D. Miss. July 31, 2017) ("To prevail on a claim for payment by mistake (also known as payment by mistake-of-fact), the government must show that the Medicare program made payments under an erroneous belief which was material to the decision to pay") (quotation and alterations omitted). The complaint here fails to allege plausible facts establishing that the payments were made wrongfully, erroneously, or illegally, because it cannot point to any published guidance or regulation that instructs (or instructed) loan applicants on how to properly account for grant-funded expenses. The government relies entirely on

17

conclusions that DHA's application numbers were wrong, but as explained above with respect to the government's FCA causes of action, the government includes no facts backing up its assumptions. This is not enough under *Twombly/Iqbal*.

Not only does the government fail to properly plead these causes of action, but also, principles of equity preclude the government from recovery on the claims. This is especially true for the claim of unjust enrichment since recovery on this claim is based on "fundamental principles of justice or equity and good conscience which give rise to an implied contract to repay the party from which the benefit was received." *Digital Drilling Data Sys., L.L.C. v. Petrolink Services, Inc.*, 965 F.3d 365, 384-85 (5th Cir. 2020) (citing *Nationscredit Corp. v. CSSI, Support Group, Inc.*, No. 05-99-01612-CV, 2001 WL 200147 (Tex. App.—Dallas Mar. 1, 2001); *see also United States v. Medica-Rents Co.*, No. 4:00-CV-483-Y, 2006 WL 247896, at *10 (N.D. Tex. Jan. 31, 2006) *aff'd sub nom. Medica Rents Co.*, 2008 WL 3876307 ("Courts should incorporate state law into federal common law in determining a cause of action governed by general principles of fairness such as restitution based on unjust enrichment.").

Nothing in the complaint demonstrates that allowing DHA to retain the funds, when it was the government who explicitly advised businesses to expedite loan applications due to limited funding, would be against the "fundamental principles of justice" or "good conscience." DHA, a non-profit organization, relied on this guidance while seeking emergency funding to continue serving vulnerable communities during a global pandemic. Even if the alleged miscalculations occurred, it was under the extraordinary circumstances of a national emergency, where the government itself seemingly prioritized speed over accuracy. Further, the government has not alleged that any funds from the PPP loan were used for ineligible expenses or used for anything but to fulfill DHA's mission of serving the economically disadvantaged in the Mississippi Delta.

18

Finally, even if these claims could proceed against DHA—and they should not—the unjust enrichment and payment by mistake causes of action must be dismissed against Womack in his individual capacity because there is no allegation of personal enrichment. The complaint does not allege that the government made any direct payment to Womack, nor does it assert that he received any personal benefit or that he used the funds for his own personal expenses. There isn't even an allegation of an indirect financial benefit, such as receiving salary payments from loan proceeds. Without allegations of personal enrichment, the claims against Womack lack the basic factual plausibility required by 12(b)(6) and must be dismissed.

## IV. CONCLUSION

For the reasons set forth above, the Court should dismiss the complaint in its entirety.

Dated: February 25, 2025

Respectfully submitted,

*/s/ Jonathan H. Ferry*
Jonathan H. Ferry, Esq. *admitted *pro hac vice*
**Bradley Arant Boult Cummings, LLP**
214 North Tyron Street, Suite 3700
Charlotte, North Carolina 28202
(704)-338-6000 (Telephone)
(704)-332-8858 (Fax)
jferry@bradley.com

*/s/ Roy D. Campbell, III*
Roy D. Campbell, III (MSB #5562)
ROY D. CAMPBELL III, PLLC
1022 Silvermine Road
New Canaan, Connecticut 06840
Telephone: (601) 291-2590
rd3campbell@gmail.com

*Attorneys for Delta Health Alliance, Inc. and H. Marlin Womack, Jr., Defendants*

19

**CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notifications of such filing to all attorneys of record.

/s/ *Jonathan H. Ferry*
Jonathan H. Ferry, Esq. *admitted *pro hac vice*
**Bradley Arant Boult Cummings, LLP**
214 North Tyron Street, Suite 3700
Charlotte, North Carolina 28202
(704)-338-6000 (Telephone)
(704)-332-8858 (Fax)
jferry@bradley.com